## TEXAS MIDLAND R. CO. v. GERON.

(Court of Civil Appeals of Texas. Texarkana. Dec. 17, 1913. Rehearing Denied Jan. 8, 1914.)

1. MASTER AND SERVANT (§ 285*)—ACTIONS FOR INJURIES—QUESTION FOR JURY.

In an action for injuries to a railway brakeman who stumbled over an obstruction as he was getting on a moving car, and thereby missed his foothold, evidence *held* to make a question for the jury as to whether the obstruction which caused him to stumble was a pile of cinders, as claimed by him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. § 285.*]

2. MASTER AND SERVANT (§ 226*)—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

It is not technically true that an employé does not assume any risk of dangers arising from or caused by the employer's negligence, where he actually knows or must necessarily become aware of the negligence in the usual and ordinary performance of his work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. § 226.*]

3. TRIAL (§ 252*)—MASTER AND SERVANT—ACTIONS FOR INJURIES — EVIDENCE AND INSTRUCTIONS.

In an action for injuries to a railway brakeman who stumbled over a pile of cinders as he was getting on a moving car and lost his foothold, evidence *held* insufficient to raise an issue as to whether he knew, or must have become aware, of the presence of the pile of cinders in the usual and ordinary performance of his work before he stumbled thereover.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

4. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTION.

In an action for injuries to a railway brakeman who stumbled over a pile of cinders as he was getting on a moving car, where there was no evidence that he knew, or must have become aware, of the presence of such cinders before he stumbled thereover, the error in charging that employés did not assume any risk of dangers arising from or caused by the employer's negligence was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

5. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTION.

Where the evidence made no issue as to assumed risk in an employé's action for injuries, the error, if any, in failing to authorize the jury to consider the question of assumed risk was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

Appeal from District Court, Lamar County; A. P. Dohoney, Judge.

Action by F. C. Geron against the Texas Midland Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The appellee, in the employ of appellant as a brakeman, sustained injuries while in the performance of his duties, for which he sues for damages. He alleges that his injuries were caused by the negligence of appellant in allowing cinders to be and remain near its track in such quantity and size as to create an obstruction dangerous to trainmen while engaged in their usual duties. The appellant answered by general denial, and specially pleaded assumed risk and contributory negligence. The cause was tried to a jury, and the verdict was in favor of the appellee. The evidence shows that when the freight train going north to Paris reached the station of Quinlan, there were on the passing track, which lies east of and runs north and south with the main track, a stock car and three flat cars to the south of the stock car. The three flat cars were to be switched from the passing track over to the main track, to be put in the train, and the stock car was to be left on the passing track. The engine, headed north, with a water car behind it, were detached from the train line, and were switched over to the passing track, where the water car was coupled onto the stock car, which in turn was coupled to the three flat cars. The engine with the water car, stock car, and three flat cars then moved north to the main track, and the three flat cars were kicked south on the main track. These three flat cars went several car lengths down the main track before they were stopped. In order to place the stock car back on the passing track, it was required that the engine move north until it passed the north switch, where the passing track connected with the main track, which was done; the switch was then thrown, and the stock car was kicked back on the passing track south, at a speed of six or eight miles per hour. It was the duty of appellee to get on the stock car as it came down the passing track, and set the brake and stop it when the car had reached the proper place. In order to perform this duty the appellee got off the north end of the north flat car on the main track, on which he was riding, while it was being kicked onto the main track, and started quickly east toward the passing track preparatory to getting on the moving and approaching stock car. The distance between the main track and the passing track at this point was about 10 feet. At the moment appellee reached the passing track the moving stock car was by him, and he made a reach with his hands for the iron handholds on the car, and placed his hands on and caught the iron handhold, and attempted to put his left foot in the stirrup on the car, when his foot suddenly caught under, or hit against an obstruction on the ground, which threw him entirely out of balance, and which caused him to miss his foothold and his body thereby to be extended the full length down the side of the car, while his feet touched and dragged on the ground against the ties, and in this position he was dragged until the strength of grip in his hands gave way, causing him to receive serious and permanent injuries. It appears that on the ground at the passing track there was a small pile of clinkers, or burnt and run together coal, consisting of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

about one dozen and a half clinkers, which had been shoveled out of one of appellant's engines, extending the length of space of four or five feet, some of the clinkers being between 8 and 10 inches in thickness, some of medium size as large as two hands, and some smaller. The facts and circumstances sufficiently warrant the finding, as involved in the verdict of the jury, that appellee's foot as he prepared to mount to the stirrup came in contact with one of the large clinkers, causing him to stumble and lose his balance, and preventing him from mounting the car. It reasonably appears from the evidence that the clinkers had been lying on the ground for several days' time, but which fact was unknown to appellee. It appears without dispute that high, green grass at the time covered and obscured the clinkers from view, and that appellee did not know of their existence there before injury. The evidence warrants the finding of facts that appellant was guilty of negligence in allowing clinkers to be and remain on or near its track as alleged, and that appellee was not guilty of contributory negligence, and was not precluded by assumed risk, and that the evidence warrants the amount of the verdict.

Dashiell, Crumbaugh & Coon, of Terrell, Dinsmore, McMahan & Dinsmore, of Greenville, and Henry C. Coke and S. W. Marshall, both of Dallas, for appellant. Moore & Hardison, of Paris, for appellee.

LEVY, J. (after stating the facts as above). [1] The first assignment predicates error upon the refusal of the court to give a requested peremptory charge to return a verdict for appellant. The insistence for error is that there is a failure of any evidence to show that appellee's injuries arose from coming in contact with and stumbling over clinkers as alleged. At the very time of his injuries, according to the evidence, appellee was engaged in switching the stock car onto the passing track. The brakeman, Blevins, and the engineer, Boyles, besides appellee, were the only witnesses testifying in the case that were present at the occurrence. The appellee testified, as material to the point considered, that: "I made a reach for the stock car and caught the irons in this position [illustrating], and attempted to put my foot in the stirrup on the stock car in order to go up and set the brake, when my foot hit an obstruction, which threw me out of balance, and I fell against the stock car in this position, with my head here and my feet nearly north. I held my feet up as well as I could, to keep from getting hurt; and the next thing I knew one of my feet hit the ground, and the next thing I knew they were picking me up. That is all I know. I had an idea at the time I had struck—when I hit the obstacle with my foot, just the minute I struck it—I had an idea what it was. I did not see the obstacle before I came in contact with it.

I was watching the movement of the stock car coming towards me. * * * Just as I made a grab for the iron I lifted up my left foot to grab the stirrup, and hit this obstacle, and the thought struck me that I had hit a clinker, and that caused me to lose my hold. I cannot say how far it was after I hit the obstacle until my strength gave out and my foot hit the ground. * * * It had rained a little shower that morning, and the grab irons were wet. The ground was not slick there that I could see. The ground was sandy, and sandy land does not get slick. I did not see whatever obstacle it was that struck my foot after I felt my foot strike against it. I judge I was standing a couple of feet from the side of the car when I caught the handholds. You cannot grab a car if you are too close to it. I would judge that was about the distance that would give me plenty of room to catch the car and plenty of foot room. The end of the cross-ties extend further out than the rails, but hardly, I think, as much as 18 inches; I think it is about as much as a box car does. I had not seen these clinkers there before that. I have no recollection of ever seeing them. I never saw them at the time of the accident, but I felt my foot strike something." The engineer, Boyles, did not see appellee fall, but did see him immediately after he had fallen. He testifies: "I went up to Geron and asked him if he was hurt, and he said he was all broke up. I asked him how it happened, and he said he must have stepped on a clinker. I called to one of the brakemen to go get a doctor, and he said he had already sent for one. Then I stepped the distance between him and the clinkers. It was between 35 and 36 feet. I suppose there were some little clinkers, and there was one the size of my cap. I don't suppose the clinkers were in a space over two feet, and in a kind of a circle. I made an examination between the space were these clinkers were, and where Geron was lying, to see if there were any footprints on the ground, and there was one impression there like as if a person had set his foot down pretty tolerably deep. It might have been an inch down, or two—say an inch in the ground. It didn't show the print of the heel, the toe and the whole foot. It showed like it was shoved down. It didn't show a track—a boot track—a foot track. I did not notice any track about the clinkers. That impression there in the ground was about 12 feet from where Frank Geron was lying." The brakeman, Blevins, testified: "I saw Frank get off the flat car, and it looked to me like he went to catch the stock car and kind of stumbled and went out of my sight for just a short while, and the car rolled up the track a way, and then I noticed Frank lying on his side, and I went up to where he was. From where I was at, the best I could tell, I saw him attempt to catch the car that had been kicked on the track,

and it looked like he stumbled, or something threw him off. When I got up to him I asked him what was the matter, and he kind of grunted, and said he stumbled over a cinder or clinker, or something of that effect. He appeared to be pretty badly hurt as far as I could tell. Before I left there I walked up the track a few feet and saw some clinkers where they had been cleaned up from the fire box. It looked like they had been thrown out, and extended over—small ones and large ones—from near the track over to the passing track, probably four or five feet from where they shoveled them out. Some of them were small, some of them as large as my hat. All I could tell about these clinkers being disturbed was that I saw some green grass growing around them, and I saw some bright-looking grass. That is all I could tell about the clinkers being disturbed. And it looked like they had been knocked around, and showed some bright-looking grass. In my opinion, from the appearance of the ground and the grass, it looked like the clinkers had been recently disturbed. * * * I don't think he moved square across from the main line towards the passing track. I believe he veered a little. He kind of jumped off the flat car, and I guess you call it veering a little towards south, as well as I remember. The next I saw of him he kind of stumbled, or missed holt or something. I believe I saw him make a grab towards the grabiron—some kind of a motion like he was going to get on. Then he went out of my sight like, and the next thing I saw was his hat go off his head. That was right after he made the grab for the car, and I kind of saw the bulk of his body in the air through the slats of the stock car. * * * It was immediately after we loaded Mr. Geron on the flat car that I went and looked at the place where the clinkers were. I saw marks on the ground, footprints—dirt fresh torn up—north of where Mr. Geron was lying; to the best of my knowledge about 6 or 8 feet. I suppose 30 or 35 feet; it may have been not so far from where he was lying to the nearest clinkers north of him."

There is no pretense in the record of there being any obstruction or substances, except the particular clinkers, in the space between the main track and the passing track. It is a necessary conclusion from the evidence above that there were several clinkers—about a dozen and a half—lying in the space outside the main track and nearer to the passing track. According to the engineer the clinkers were in a circle over a space of two feet, and according to the brakeman the clinkers were extended in a line of four or five feet, beginning at the passing track; and both agree that several of the clinkers were of the size of a man's hat. And the testimony of the engineer, who stepped the distance at the time of the injury, was to the effect that the clinkers were located "between 35 and 36 feet" above the point where the body of appellee was lying on the ground after he fell from the car. The brakeman says that just after the injury, and commencing at the point on the ground where the body of appellee was lying after the fall, he "walked up the track a few feet and saw some clinkers, where they had been cleaned out from the fire box"; and on cross-examination: "I suppose it was 30 or 35 feet; it may not have been so far, from where he (appellee) was lying to the nearest clinker north of him." And according to the testimony of the brakeman the appearance on the ground of green grass and bright-looking grass showed that a clinker had been recently disturbed. According to appellee he was dragged a distance from where he attempted to get on the car to the point where he fell, which could reasonably be inferred was the length of the car, or about 35 or 36 feet. Thus by giving force to all the testimony it is believed that the facts and circumstances reasonably point to a clinker as the obstacle that the appellee's left foot struck, causing him to lose his balance, and the court did not err in passing the question to the jury.

The appellant argues that the appellee, to reach the moving stock car, must necessarily have gone some distance south of the clinkers, and therefore could not have struck any of them. This is on the theory that the evidence indisputably shows that the clinkers were located halfway between the north end of the flat car on which appellee was standing and the switch, and the north flat car to be located several car lengths below the clinkers, to the south of the switch. While the record has Mr. Blevins saying, as insisted by appellant, "I suppose it was about halfway from the first flat car, the north flat car on the main line, to the switch of the passing track in the yards there at Quinlan that I saw these clinkers," it also has him saying in the very succeeding sentence these words: "I suppose it would be about five car lengths, maybe a little further, from the clinkers up to the switch, as well as I remember"—and the record further on has him saying that the distance from the body of appellee to the clinkers, when appellee was lying on the ground where he fell from the stock car, was "30 or 35 feet." The record has Mr. Blevins locating the north end of the flat car on which appellee was standing at the time he went to catch the moving stock car at "probably half a car length or a car length in the clear of the clearing post." We do not think that the witness Blevins intended, considering all his testimony, to locate the flat car at several car lengths, or any distance south of and below the clinkers, but that his testimony is in harmony and consistent with the other evidence and circumstances. If force be given to his testimony that the clinkers were five car lengths from

the switch this would put the north end of the north flat car, if rolling only one-half a car length below "the clearing post," probably one car length, or 36 feet, north above the clinkers; and if appellee "veered to the south," as Blevins said, he could have reached the clinkers. And if the cars rolled a car length below "the clearing post," this would place the north end of the north flat car probably near or opposite to the clinkers. And if he went directly across, as appellee says, he would have reached the clinkers. And even if we assume that the witness Blevins intended to locate the flat car above or below the clinkers, yet in determining an issue vel non for the jury, the testimony of appellee and the circumstances could not be all ignored and Blevins' statements taken as conclusive. We think the assignment must be overruled.

[2-4] The second assignment predicates error upon the following part of the second paragraph of the court's charge: "But they [employés] do not assume any risk of dangers arising from or caused by the negligence of the company." The charge in hand is not technically correct where the employé actually knew, or must necessarily have become aware of the neglect in the usual and ordinary performance of his work. But in this case under the facts no injury could be said to have resulted to appellant from the abstract charge given by the court, for the evidence did not present nor tend to raise an issue of assumed risk, even if the common-law doctrine of assumed risk were applicable, as contended by appellant. The facts relied on and urged as showing assumed risk were the clinkers being on the ground, and appellant's knowledge of their existence. There were, under the evidence, about a dozen and a half clinkers of varying size from very small ones to the size of a hat, lying on the ground either in a circle of about two feet, as said by the engineer, or extended lengthwise, as said by the brakeman, over a distance of four or five feet. And these clinkers were covered by green grass growing over them. Appellee did not know of their existence on the ground before the injury, and there are no facts tending in the least to challenge or conflict with this statement in respect thereto. And it is not disputed that the disance he had to travel from the flat car to the rapidly approaching stock car was about 10 feet, and that he covered the distance quickly by three or four steps to catch the moving car, intent at the moment on the movement of the stock car. And he stumbled over a clinker only the moment he caught the handhold of the moving car. There are no other facts or circumstances tending to show that he must have become aware of the clinkers in the usual and ordinary performance of his work until the very moment he stumbled, which caused the injury. In view of the evidence the assignment is overruled as being without injury.

[5] The third assignment predicates error in the third paragraph of the court's charge as being affirmative error in failing to authorize the consideration by the jury of assumed risk on appellee's part. The answer to this must be, as in the preceding assignment, that the evidence does not make any issue of assumed risk, and therefore the error, if any, is entirely harmless, and would not be a ground justifying a reversal of the judgment.

We feel that the presentation of this case on appeal by appellant's counsel, in bringing forward only assignments that this court should properly be called upon to review, should be commended as a proper course to be followed.

The judgment of the court below is affirmed.